In the MATTER OF the Care and Treatment of Jack BROWN a/k/a Gary Jones, Appellant,

v.

STATE of Missouri, Respondent.

WD 79594

Missouri Court of Appeals, Western District.

OPINION FILED: March 28, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 2017

849

Chelsea R. Mitchell, Assistant Public Defender, Columbia, MO, Attorney for Appellant.

Joshua D. Hawley, Attorney General, Daniel N. McPherson, Assistant Attorney General, Jefferson City, MO, Attorneys for Respondent.

Before Division Three: Karen King Mitchell, Presiding Judge, and Victor C. Howard and Gary D. Witt, Judges

Karen King Mitchell, Presiding Judge

Jack Brown appeals, following a jury trial, his civil commitment for control, care, and treatment as a sexually violent predator. Brown raises seven points on appeal. The first four challenge the constitutionality of various aspects of the Sexually Violent Predator Act (SVPA). Brown's fifth point argues that the court erred in permitting use of the term, "sexually violent predator," during trial. His sixth point challenges the court's ruling permitting both comment and testimony regarding the screening process for civil commitment under the SVPA. And his final point argues that the court plainly erred in admitting statements from the victim of a sexual assault allegedly committed by Brown in 1990. Finding no reversible error, we affirm.

## Background

In 2005, Brown pled guilty to forcible sodomy for his acts of grabbing a woman from a bus stop, dragging her to a vacant lot, forcing her onto her knees, and anally

raping her; he was sentenced to ten years in the Department of Corrections. During his first eight and one-half years of incarceration, Brown had 130 conduct violations, 64 of which involved sexual misconduct. Most of the sexual misconduct violations involved masturbating in front of or exposing his penis to female staff members. But one of the violations involved Brown holding a razor blade to another inmate's throat while Brown anally raped him.

Because of his numerous and repeated conduct violations, Brown spent a large portion of his incarceration in administrative segregation at a maximum security facility; consequently, he was unable to participate in the Missouri Sex Offender Program, as the program was conducted only at a medium security facility. Though Brown was advised that he would need to change his behavior in order to change his security level and obtain admission into the program, Brown did not do so.

A review of Brown's offense history revealed two convictions for indecent conduct in 1982 and 1985 (though the nature of the conduct was unclear), as well as charges of rape and forcible sodomy against the same victim in 1990. During cross-examination of Brown's expert witness, after Brown's expert testified that the 1990 offense was "totally different" from the 2005 conviction, the State introduced the 1990 victim's statements from two days after the incident. In her statement, the victim indicated that Brown, then a co-worker, had come over to her home to deliver some work-related papers. After Brown arrived, he stayed and drank for a while, even leaving at one point to purchase more alcohol and then returning. Because the victim had two loud roommates, she and Brown went into her bedroom to continue talking. Once they entered the victim's bedroom, Brown shut the door and locked it, advising the

victim that she "was going to do something." Brown then pulled his pants down to his ankles and began to hit the victim in the face with his penis. Brown warned the victim not to say anything or he would hurt her. Brown then turned off the lights, pushed the victim down onto the bed, put his hand over her mouth, and began to vaginally rape her. Brown then forced the victim to perform oral sex, after which, he vaginally raped her again and then anally raped her. The 1990 case was ultimately dismissed because the victim refused to appear for trial.

Before Brown's release from the Department of Corrections, Dr. Nena Kircher drafted an end-of-confinement report, wherein she opined that Brown potentially met the definition of a sexually violent predator under the SVPA. Dr. Steven Mandracchia was later appointed by the court, pursuant to the SVPA, to conduct an evaluation of Brown and render an opinion as to whether Brown met the definition of a sexually violent predator under the SVPA. Dr. Mandracchia determined that Brown suffered from paraphilia, not otherwise specified, non-consent, that Brown's paraphilia constituted a mental abnormality under the SVPA, and that Brown's paraphilia caused him serious difficulty controlling his behavior and rendered him more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility.

Brown hired Dr. Luis Rosell to conduct a separate evaluation. Though Dr. Rosell diagnosed Brown with antisocial personality disorder, Dr. Rosell opined that Brown did not have a mental abnormality under the SVPA and that Brown was not more likely than not to engage in predatory acts of sexual violence if not confined.

Following a trial, the jury found Brown to be a sexually violent predator, and the court ordered him committed to the custo-

dy of the Department of Mental Health for control, care, and treatment. Brown appeals.

## Jurisdiction

 Because Brown raises four claims challenging the constitutionality of the SVPA, we must address our jurisdiction over this appeal, as "[a]rticle V, section 3 of the Missouri Constitution vests th[e Missouri Supreme] Court with exclusive appellate jurisdiction in all cases involving the validity of a statute." *McNeal v. McNeal–Sydnor*, 472 S.W.3d 194, 195 (Mo. banc 2015). But the Missouri Supreme Court's "exclusive appellate jurisdiction is not invoked simply because a case involves a constitutional issue." *Id.* To invoke the Court's exclusive jurisdiction, "[t]he constitutional issue must be real and substantial, not merely colorable." *Id.* "When a party's claim is not real and substantial, but, instead, merely colorable, our review is proper." *Ahern v. P & H, LLC*, 254 S.W.3d 129, 134 (Mo. App. E.D. 2008).

 "In determining whether a constitutional claim is real and substantial or merely colorable, [the reviewing c]ourt makes a preliminary inquiry as to whether [the claim] presents a contested matter of right that involves fair doubt and reasonable room for disagreement." *Mo. Hwy. and Transp. Comm'n v. Merritt*, 204 S.W.3d 278, 285 (Mo. App. E.D. 2006). "If this initial inquiry shows that the claim is so legally or factually insubstantial as to be plainly without merit, the claim may be deemed merely colorable." *Id.*

 Here, each of the constitutional challenges Brown raises have been addressed by either the United States Supreme Court or the Missouri Supreme Court. Thus, they do not involve fair doubt or reasonable room for disagreement.

Rather, they are merely colorable. Accordingly, we have jurisdiction over this appeal.

## Analysis

### Points I–IV

In his first three points on appeal, Brown argues that the probate court erred in overruling his motions to dismiss, which alleged that the SVPA was unconstitutional insofar as it violates due process and equal protection, as well as the bars on ex post facto laws, double jeopardy, and cruel and unusual punishment. In his fourth point, he argues that the probate court erred in overruling his motion to dismiss, alleging that the SVPA is unconstitutional because it fails to require proof of serious difficulty controlling behavior. All of these claims have been addressed and ruled against Brown's position by either the United States Supreme Court or the Missouri Supreme Court.

### A. Standard of Review

 "Typically, this Court reviews the trial court's ruling on a motion to dismiss for an abuse of discretion." *State v. Williams*, 411 S.W.3d 315, 319 (Mo. App. E.D. 2013). "However, this Court reviews the circuit court's determination of the constitutional validity of a state statute de novo." *Id.* "Statutes are presumed constitutional and will be found unconstitutional only if they clearly contravene a constitutional provision." *Id.* "The rules applicable to constitutional construction are the same as those applied to statutory construction, except that the former are given a broader construction, due to their more permanent character." *Id.*

### B. The SVPA is civil, not criminal.

 In his first and third points, Brown argues, on the basis of a federal district

court decision,[1] that the SVPA is punitive and, as such, it violates his right to be free from ex post facto laws, double jeopardy, and cruel and unusual punishment. But the SVPA is largely similar to the statutory scheme at issue in *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), wherein the United States Supreme Court held that this statutory scheme for civil commitment did not establish criminal proceedings and was, thus, nonpunitive. *Id.* at 361, 369, 117 S.Ct. 2072. The Court held:

> Where the State has disavowed any punitive intent; limited confinement to a small segment of particularly dangerous individuals; provided strict procedural safeguards; directed that confined persons be segregated from the general prison population and afforded the same status as others who have been civilly committed; recommended treatment if such is possible; and permitted immediate release upon a showing that the individual is no longer dangerous or mentally impaired, we cannot say that it acted with punitive intent.

*Id.* at 368–69 (internal quotation omitted).

In 2008, following *Hendricks*, the Missouri Supreme Court addressed a constitutional challenge to the SVPA. *In re Van Orden*, 271 S.W.3d 579 (Mo. banc 2008). And, like the United States Supreme Court in *Hendricks*, the Missouri Supreme Court ultimately determined that "[a]lthough the proceedings involve a liberty interest, they are civil proceedings." *Id.* at 585.

■ "[T]he phrase 'ex post facto law' applies exclusively to criminal laws . . . ." *State v. Honeycutt*, 421 S.W.3d 410, 419 (Mo. banc 2013). Because the SVPA has been conclusively determined by our Supreme Court to be civil, rather than criminal, it cannot constitute an ex post facto law. And, "[b]ecause . . . the . . . Act is civil in nature, initiation of its commitment proceedings does not constitute a second prosecution"; thus, it "does not violate the Double Jeopardy Clause, even though that confinement may follow a prison term." *Hendricks*, 521 U.S. at 369, 117 S.Ct. 2072. And, because confinement upon commitment does not constitute punishment, commitment cannot be deemed cruel or unusual punishment.

■ "We are bound to follow the latest Missouri Supreme Court precedent." *State v. D.W.N.*, 290 S.W.3d 814, 829 (Mo. App. W.D. 2009). Thus, despite Brown's urging that we reject the law as stated in *Van Orden*, we will not do so. The SVPA is civil in nature; thus, Brown has failed to demonstrate a necessary prerequisite to establishing his constitutional challenges.

Points I and III are denied.

## C. The SVPA does not violate the Equal Protection Clause.

■ In his second point, Brown argues that the SVPA is unconstitutional because, unlike general civil commitment statutes, it does not require that he be held in the least restrictive environment. As with his first and third claims, this challenge has already been raised and rejected by the

---

1. *Van Orden v. Schafer*, 129 F.Supp.3d 839 (E.D. Mo. 2015). In that case, the federal district court determined that Missouri's SVPA was unconstitutional *as applied* to the plaintiffs, who were "civilly committed residents of the Missouri Department of Mental Health's . . . Sex Offender Rehabilitation and Treatment Services . . . facilities, who ha[d]

been declared sexually violent predators . . . under Missouri's SVP Act." *Id.* at 842, 869. The court expressly rejected the plaintiffs' claim that the SVPA was unconstitutional on its face. *Id.* at 865. As Brown's challenges are all facial challenges, we find his reliance on this case misplaced.

Missouri Supreme Court. In *In re Norton*, 123 S.W.3d 170, 174 (Mo. banc 2003), the Court held that the SVPA "is narrowly tailored to serve [the] compelling state interest ... [of] protecting the public from crime." "This interest justifies the differential treatment of those persons adjudicated as sexually violent predators ...." *Id.* "Because the basis for commitment of sexually violent predators is different from general civil commitments, there is no requirement that sexually violent predators be afforded exactly the same rights as persons committed under the general civil standard." *In re Coffman*, 225 S.W.3d 439, 445 (Mo. banc 2007).

Point II is denied.

**D. The SVPA, as construed by the Missouri Supreme Court, requires proof of serious difficulty controlling behavior.**

 In his fourth point on appeal, Brown argues that the SVPA is unconstitutional because it does not require proof of serious difficulty controlling behavior. Though it is true that the statutory definitions of "mental abnormality" and "sexually violent predator" make no mention of "serious difficulty controlling behavior," the Missouri Supreme Court has interpreted the statutes to contain that requirement, and Brown's jury was instructed regarding the necessity of finding that Brown had "serious difficulty in controlling his behavior."

In *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), the United States Supreme Court held that, for civil commitment statutes such as the SVPA to be constitutional, "there must be proof of serious difficulty in controlling behavior." *Id.* at 413, 122 S.Ct. 867. Following the decision in *Crane*, the Missouri Supreme Court interpreted the SVPA in *In re Thomas*, 74 S.W.3d 789 (Mo. banc 2002). In *Thomas*, the Missouri Supreme

Court noted that, "[t]o comply with *Crane*, the instruction defining mental abnormality must read as follows: As used in this instruction, 'mental abnormality' means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to commit sexually violent offenses in a degree *that causes the individual serious difficulty in controlling his behavior*." *Id.* at 792.

The instruction mandated by the Missouri Supreme Court in *Thomas* was given in Brown's case. Instruction Number 6 stated:

As used in these instructions, "mental abnormality" means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to commit sexually violent offenses in a degree that causes the individual serious difficulty in controlling his behavior.

Point IV is denied.

### Points V–VII

In Point V, Brown argues that the court erred in denying his motion to dismiss and permitting the use of the term "sexually violent predator" in his trial insofar as the term is unfairly prejudicial because it is inherently pejorative. In Point VI, Brown claims that the court erred in permitting comment and testimony about the screening process for SVP commitments insofar as the information was irrelevant and improperly bolstered the State's expert's opinion. And, finally, in Point VII, Brown argues that the court plainly erred in admitting the 1990 victim's statements because they were not reasonably reliable.

**A. It was not error to permit the use of the term "sexually violent predator" in a trial to determine whether Brown met the statutory definition of a sexually violent predator.**

 Brown first argues that the court erred in denying his motion to dismiss

based upon the "unfairly prejudicial" term "sexually violent predator." "Generally, a trial court's denial of either 'a motion to dismiss or a motion for summary judgment is not a final judgment and is not reviewable.'" *In re Arnold*, 292 S.W.3d 393, 396 (Mo. App. E.D. 2009) (quoting *Hess v. Blacksher*, 116 S.W.3d 708, 709 (Mo. App. E.D. 2003)). "Thus, [Brown's] ... request[ for] review of the denial of his motion to dismiss is not properly before this Court." *Id.*

▮▮▮▮ Alternatively, Brown argues that the court erred in permitting use of the phrase during trial. "The determination of whether to admit evidence is within the sound discretion of the trial court." *In re Elliott*, 215 S.W.3d 88, 92 (Mo. banc 2007). "A trial court will be found to have abused its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

We recently addressed the same claim in *In re George*, 515 S.W.3d 791 (Mo. App. W.D. 2017), and concluded that it lacked merit. In *George*, the appellant—like Brown—argued that the use of the term "sexually violent predator" was inherently prejudicial, also relying on *State v. Perry*, 275 S.W.3d 237 (Mo. banc 2009), and *State v. Whitfield*, 837 S.W.2d 503 (Mo. banc 1992). We held that the use of the phrase "sexually violent predator" was "plainly allowable under [both] *Perry*" and *Whitfield* because "the State's use of the phrase ... was in the context of arguing to the jury that the evidence proved that George is an SVP." *George*, 515 S.W.3d at 802. "[T]he State's reference[s] to George being an SVP were not 'designed solely to inflame jurors against the defendant by associating him with heinous crimes not in the record.'" *Id.* (quoting *Whitfield*, 837 S.W.2d at 513). "Rather, they were assertions wholly based on the evidence, which the State was required to prove under § 632.480." *Id.*

Point V is denied.

## B. The probate court did not err in permitting comment and testimony regarding the screening process required under the SVPA.

▮▮▮▮ In his sixth point, Brown argues that the court erred in permitting comment and testimony about the screening process for SVP commitment. "We review a trial court's ruling on an objection to remarks made in an opening statement for abuse of discretion." *State v. Hoover*, 220 S.W.3d 395, 401 (Mo. App. E.D. 2007). "We will reverse only if it is probable that the improper comments had a substantial effect on the judgment." *Id.* Similarly, "[t]rial courts have broad discretion to admit or exclude evidence at trial." *Id.* And "[w]e will reverse a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion." *Id.* "A trial court abuses its discretion when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* If any "prejudice resulting from the improper admission of evidence is outcome-determinative, reversal is required." *Id.* at 401–02.

To support his claim of error, Brown relies primarily on two cases from the Supreme Court of Kansas and the Supreme Court of Iowa.

In *In re Foster*, 280 Kan. 845, 127 P.3d 277 (2006), the Kansas Supreme Court was asked to decide whether the State's attorney engaged in misconduct by commenting during opening statement about the procedure leading up to Foster's commitment

trial. *Id.* at 851, 127 P.3d 277. During opening statement, the State advised the jury:

"By the time we get to this point where we are in front of twelve jurors and are asking you to make this determination [that Foster is a sexually violent predator], a lot has happened. Not only has the Respondent been convicted of sexually violent offenses, but he has been incarcerated and has gone through a treatment program in prison and he has been evaluated by psychologists in prison and he was released on parole with the stipulation that he participate in outpatient treatment care. His parole was violated when it was determined that he was not progressing or doing well in the after-care treatment program, and also, there was indications through the parole office that he had had unsupervised contact and perhaps sexual contact with minors while on parole."

*Id.* at 852, 127 P.3d 277. The State's attorney further argued:

"After the parole is violated and he was back in prison again, then the case—[1] his case is reviewed by a committee called a multidisciplinary team which looks at all of his records, his charges, accusations, past sexual behavior, and that committee makes a determination as to whether or not he is a risk to reoffend. [2] Then it's passed on to another committee which, which is called the prosecutors' committee. That is where I come in and several other attorneys and we make a determination again based on the records, psychologists reviewed opinions in whether or not this man is at risk to reoffend, and [3] then there is a hearing, a probable cause hearing where a Judge determines whether or not the State has enough evidence to go forward under the Sexu-

ally Violent Predator Act. In this case, the Judge determined that there was." *Id.* The State's attorney then "concluded her recitation of the procedural history: 'So this respondent, Mr. Foster, has been through many layers of review and analyses [sic] until we finally get here, and that's the ultimate determination for you to make.'" *Id.* at 853, 127 P.3d 277.

On appeal, Foster argued that the State's attorney's "statements were improper because before the jury ever heard any evidence, it was told that a judge, a team of prosecutors, and a committee of professionals decided that Foster should be prosecuted as a sexually violent predator." *Id.* He further argued "that the statements predisposed the jury to find Foster is a sexually violent predator, an invasion of its province which require[d] reversal." *Id.* The Kansas Supreme Court agreed, holding that "allowing the State in this KSVPA commitment proceeding to tell the jurors—before it even hears any evidence—that a multidisciplinary team of professionals, a team of prosecutors (including the attorney prosecuting the case), and the judge have all previously determined that sexually violent predator commitment proceedings should proceed against Foster is extremely prejudicial." *Id.* at 861, 127 P.3d 277. The court concluded "that these statements by the State, and this type of State evidence, 'stack[ed] the deck' against Foster [insofar as] ... a jury has a natural tendency to look for guidance from those clothed in authority, i.e., a multidisciplinary team of professionals, a team of prosecutors, and a district court judge, even when the guidance is not intended." *Id.* at 857, 127 P.3d 277. Above all, however, the court noted that "the most troubling aspect of the opening statement is the State's reference to the judge's prior determination of probable cause ... because it expresses judicial approval of the State's case." *Id.* at 858, 127 P.3d 277.

The Iowa Supreme Court faced a similar challenge in *In re Stenzel*, 827 N.W.2d 690 (Iowa 2013). While *Foster* involved opening statement, *Stenzel* involved testimony from the State's expert witness. *Id.* at 704. During direct examination, the State's expert was asked to explain the civil commitment process to the jury. *Id.*

> He then informed the jury that out of the universe of sex offenders due to be released, "some" are referred by the directors' review committee to the multidisciplinary team, and of those only "a very small percentage" are in turn referred to the attorney general's office. He testified that "multiple independent evaluators" are used. When the case reaches the attorney general's office, Dr. Leavitt might be asked to serve as a preliminary independent evaluator. If so, and if he finds the individual meets the SVP criteria, he would present his findings to a review committee which would then decide whether to file an SVP petition. On occasions in the past, the attorney general has not filed an SVP petition even though the independent evaluator concluded the individual met the statutory criteria.

*Id.* The expert indicated, outside the presence of the jury, that his opinion that Stenzel was a sexually violent predator was based, at least in part, on the screening process. *Id.* After "present[ing] testimony through [the expert] about the screening process, the State highlighted it in closing argument, where it was essentially the first topic covered." *Id.* at 705. "The State's counsel argued to the jury that there is 'a screening process that goes into this and it's pretty sensitive and not many people meet the criteria as a sexually violent predator.'" *Id.* "After recapping that screening process, counsel concluded, 'In this case, at every step of the way, Mr. Stenzel has been considered to meet crite-

ria for SVP, but what's really—what's important is what do you think?'" *Id.*

On appeal, Stenzel argued that the expert's testimony was improperly admitted because it was not the proper basis for expert testimony and was unfairly prejudicial. *Id.* The Iowa Supreme Court agreed:

> We conclude the district court abused its discretion in admitting Dr. Leavitt's testimony about the selection process for several reasons. First, there was no evidence that psychologists generally rely on the existence of a government-run screening process when they make a diagnosis of sexual deviancy. ... Second, [the rule governing expert opinion testimony] is limited to "facts or data" that could be "reasonably relied upon." ... Dr. Leavitt participated in that [initial] screening process. His own opinions were part of the reason that Stenzel continued through it. Rule 5.703 was not intended to be a mechanism for experts to self-bolster their own opinions. ... Third, and perhaps most important, ... [i]f the probative value of allowing the expert to testify to underlying facts and data "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," the evidence should be excluded.

*Id.* at 705–06. The court held that "[t]he prosecutor's closing argument serves as a useful barometer of the prejudicial character of the evidence." *Id.* at 706. The court noted that, after reminding the jury that "not many people meet the criteria as a sexually violent predator[,]" [t]he State then reviewed the hoops that Stenzel's case had to get through." *Id.* The State also reminded the jury that, "at every step of the way, Mr. Stenzel has been considered to meet criteria for SVP." *Id.*

While we take no issue with these holdings from our sister states, the facts before us in Brown's case are simply distinguish-

able. Unlike the State's attorney in *Foster*, the assistant attorney general in Brown's case did not discuss the screening process in elaborate detail during opening statement. While he did mention it briefly, it was for the purpose of introducing one of the State's witnesses—the psychologist that performed the statutorily required end-of-confinement report:

> You're also going to hear from a psychologist who was—her name is Dr. Nena Kircher. And at the time that Mr. Brown was approaching release from prison, she worked for the Department of Corrections as their—one of their psychologists who is responsible for reviewing sex offenders who are about to be released.
>
> . . .
>
> Dr. Kircher is a psychologist at the Department of Corrections, whose responsibility it is to review cases of inmates before they're released on either parole or before their final sentence is completed to determine whether they may qualify as a sexually violent predator.

The assistant attorney general made no mention of either the multidisciplinary team or the prosecutor's review committee.

And, unlike the expert witness in *Stenzel*, the State's expert in Brown's case never indicated any reliance on the screening process in forming his opinion. And unlike the States' attorneys in both *Foster* and *Stenzel*, the assistant attorney general in Brown's case did not argue about the screening process in any way during closing argument.

This case is distinguishable from both *Foster* and *Stenzel*. The brief mentions of the screening process in Brown's case were solely to provide context for the jury as to the identity of the State's expert witnesses. Unlike the discussions in both *Foster* and *Stenzel*, the mentions in

Brown's case were *not* offered for the purpose of urging the jury to discard its independent duty to determine Brown's status and instead rely on prior determinations of those "clothed in authority."

Point VI is denied.

### C. The probate court did not plainly err in permitting the State to introduce statements from the victim of the 1990 offense.

 In his final point, Brown argues that the court plainly erred in permitting the State to introduce statements from the victim of the alleged 1990 sexual assault into evidence. Though acknowledging that the State's expert relied on these statements in forming his opinion, Brown argues that they were not otherwise "reasonably reliable" as is required for admission of such evidence under § 490.065. Brown acknowledges that he failed to include this claim of error in his motion for new trial and, thus, requests plain error review. *See* Rule 78.07(a) (requiring most claims to be set forth in a motion for new trial in order to be preserved for appeal).

Plain error review is limited to a determination of whether there is plain error affecting substantial rights resulting in manifest injustice or a miscarriage of justice. We use a two-step process when conducting plain error review. We first determine whether or not the error is plain, and second, we determine whether or not manifest injustice or miscarriage of justice would result if the error is left uncorrected. We will reverse for plain error in civil cases only in those situations when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case.

*Riggs v. State Dep't of Soc. Servs.*, 473 S.W.3d 177, 186 (Mo. App. W.D. 2015) (internal quotations omitted).

Brown argues, essentially, that the statements of the victim of the alleged 1990 sexual assault were inadmissible under § 490.065 because they were an improper subject for expert testimony, they usurped the jury's function by having an expert comment on their credibility, and they were not "otherwise reasonably reliable." We disagree.

Section 490.065 provides, in pertinent part:

1. In any civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

. . .

3. The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

This "statute simply provides that the circuit court is responsible for determining whether (1) the expert is qualified; (2) the expert's testimony will assist the trier of fact; (3) the expert's testimony is based upon facts or data that are reasonably relied on by experts in the field; and (4) the facts or data on which the expert relies are otherwise reasonably reliable." *Kivland v. Columbia Orthopaedic Grp., LLP*, 331 S.W.3d 299, 310–11 (Mo. banc 2011).

■■■ Before analyzing the admissibility of the statements, it is important to first discuss how they came into evidence. During Dr. Mandracchia's testimony, he indicated that he reviewed records pertaining to the alleged 1990 sexual assault and that he relied upon them in reaching his conclusion that Brown suffered from paraphilia, not otherwise specified, non-consent. The victim's statements, however, were not introduced during the State's case-in-chief. Rather, the State chose to introduce them during its cross-examination of Dr. Rosell—Brown's expert. And the reason the State chose to do so was to impeach Dr. Rosell's conclusion that the 1990 offense was "totally different" from the 2005 conviction—an opinion elicited by Brown during Dr. Rosell's direct testimony. Had Brown not elicited testimony from his own expert indicating that the two crimes were "totally different," our analysis of the admissibility of these statements may be different.

■■■ To the extent that the admission of these statements constitutes error at all, it was invited by Brown's own questioning of Dr. Rosell. "The general rule of law is that a party may not invite error and then complain on appeal that the error invited was in fact made." *In re Berg*, 342 S.W.3d 374, 384 (Mo. App. S.D. 2011) (quoting *Lau v. Pugh*, 299 S.W.3d 740, 757 (Mo. App. S.D. 2009)). And "a party who has introduced evidence pertaining to a particular issue may not object when the opposite party introduces related evidence intended to rebut or explain." *State v. McFall*, 737 S.W.2d 748, 756 (Mo. App. S.D. 1987). "This is true even though the evidence introduced to rebut or explain would have been inadmissible in the first instance." *Id.* "[S]elf-invited [error] cannot serve as grounds for reversal on plain error review." *Sasnett v. Jons*, 400 S.W.3d 429, 438 (Mo. App. W.D. 2013).

■■■ In any event, Brown has failed to establish that the trial court erred in ad-

mitting the evidence. As mentioned above, Dr. Mandracchia testified that he relied on the information in forming his opinion and that it is the type of information experts in his field typically rely on in forming their opinions. Brown argues that the statements failed to meet the "otherwise reasonably reliable" component of admissibility under § 490.065.3. His argument, however, centers on the alleged implausibility of the victim's account of the events. But it is well understood that "[a]ny weakness in the factual underpinnings of the expert's opinion ... goes to the weight that testimony should be given and not its admissibility." *Elliott*, 215 S.W.3d at 95 (quoting *Alcorn v. Union Pac. R.R.*, 50 S.W.3d 226, 246 (Mo. banc 2001)). And, here, Brown had the opportunity and did argue the weight of the 1990 victim's statements, suggesting to the jury that her claims of sexual assault were unbelievable:

> Now, on the, on the credibility of the witnesses. [The 1990 victim], you know, you heard her statement. And I think you have to think that there is something else going on there. There—maybe things started out where she was interested and then became disinterested when he was very interested and wanted to get rid of him.

> And because he was, you know, wouldn't, like wouldn't leave, was just this persistent person, she just went and reported him to get him off her back and then dropped it because she didn't want to proceed with phony charges.

> But I think when you listen to her statement, it's clear that there was some involvement there. You don't invite a total stranger that you're not interested in, into your house, where you meet them at 6:00 p.m. in a nightgown and then you have some alcohol with them and then you invite them into your bedroom. Come on, give me a break.

> At 10:00, saying we're going to go in there and he's going to quiz me on abbreviations for Taco John's. You know, you make the call. But I suggest to you that, you know, you have to consider the facts in these things. She, she has credibility problems.

In short, Brown's claim is without merit. Point VII is denied.

### Conclusion

Brown has failed to establish that any reversible error occurred during his SVP trial. The probate court's judgment is affirmed.

Victor C. Howard and Gary D. Witt, Judges, concur.