**AFFIRM; and Opinion Filed May 8, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00894-CV

### IN RE THE COMMITMENT OF JOSE CAVAZOS

On Appeal from the 282nd Judicial District Court
Dallas County, Texas
Trial Court Cause No. CV1770006

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Schenck

This appeal involves a civil commitment pursuant to the Civil Commitment of Sexually Violent Predators Act. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.153. A jury found Jose Cavazos to be a sexually violent predator as defined in section 841.003 of the Texas Health and Safety Code. The trial court ordered Cavazos committed until his behavioral abnormality changes to the extent he is no longer likely to engage in a predatory act of sexual violence. *See id.* § 841.081. In a single issue, Cavazos contends the trial court erred in admitting certain evidence. We overrule appellant's issue and affirm the trial court's judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

In August 2017, the State filed a petition seeking to commit Cavazos for treatment and supervision, alleging that Cavazos is a sexually violent predator. The State alleged that Cavazos had previously been convicted of two sexually violent offenses, triggering statutory eligibility for

civil commitment. These offenses occurred in Dallas and Hidalgo Counties. The State further alleged that an expert had performed a clinical assessment of Cavazos and found he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. At the time the petition was filed, Cavazos was in his mid-60s, in poor health, and had been incarcerated for more than 24 years. Cavazos was scheduled to be released from prison by August 30, 2019.

At trial, the State called two witnesses, Dr. Randall Price and Cavazos himself. The State also introduced into evidence Cavazos' penitentiary packets. Dr. Price is the forensic psychologist the State hired to evaluate Cavazos. After describing his background, training, and how forensic evaluations are conducted, Dr. Price briefly described the process that leads to a civil commitment proceeding.[1] He testified that close to the time that an inmate will be released from incarceration, prison employees will examine the inmate's records to determine whether he has two or more convictions for sexual offenses. If so, he is considered for an initial evaluation. Thereafter, he may be referred to a "Multi-Disciplinary Team" that will further examine his file and decide whether to seek a forensic psychological evaluation. From there, the inmate may be referred to the Special Prosecution Unit in Huntsville or to the county in which the person was most recently convicted of a sexually violent offense. The Special Prosecution Unit or the county may in turn obtain a psychological evaluation before deciding whether to proceed with a request for civil commitment. In those instances, a forensic psychologist like Dr. Price will typically review all of the inmate's criminal and medical records, including the previous evaluations, and conduct a face-to-face interview to assess whether the inmate has a behavioral abnormality.

Dr. Price went on to describe his involvement in Cavazos' case and his opinions concerning whether Cavazos is a sexually violent predator. Before interviewing Cavazos, Dr. Price reviewed

---

[1] Dr. Price's testimony concerning the screening process comprises 5 pages out of approximately 200 pages of trial testimony.

–2–

Cavazos' offense reports, police reports, court documents, prison file, and psychological and psychiatric evaluations.

Dr. Price described Cavazos' criminal history in great detail and explained that his history is relevant to determining whether he has a behavioral abnormality. Cavazos' records showed a pattern of nearly four decades of serious sexual offenses, most of which involved pre-pubescent boys. Cavazos' records further showed he had been sent to juvenile facilities for punishment and treatment, had received sex offender treatment in a California state hospital, had received shock probation, and served time in prison, and that despite his numerous pronouncements that he would not offend again, he did repeatedly so.

Dr. Price enumerated that Cavazos began committing sexual offenses against children at the age of 15. He explained that age 15 is a very early age to start committing offenses against other children and is very significant because the sexual deviancy is more ingrained and more significant when it begins at an early age. He expounded that "early starters" tend to commit more sexual offenses, even after being caught and sanctioned.

Dr. Price testified that Cavazos' first victims were 8 and 11 years old. These children were strangers to Cavazos, meaning he had known them for less than 24 hours when the assaults occurred. Dr. Price testified about additional offenses Cavazos committed in the early 1970s, 1978, 1980, 1981, 1984, and 1994. Cavazos committed the offenses in multiple jurisdictions, including California, Louisiana, and Texas.

Dr. Price stated that Cavazos admitted to him that he had victimized approximately 30 children, some of whom he sexually assaulted on more than one occasion. Dr. Price indicated that in his experience offenders like Cavazos tend to under report the number of their victims. Cavazos further admitted to Dr. Price that he used his position as a volunteer baseball coach and his job as an ice-cream truck-driver to attain access to some of the children he molested. He also molested

children he picked up at shopping malls, fairs, and parks. He also shared his typical modus operandi. He would give them money or pay for arcade games and cokes before convincing them to go into a restroom with him where the molestation then would occur. During the interview, which took place approximately 3 months before trial, Cavazos admitted to Dr. Price that he is still interested in boys, and that when he gets out of prison he plans on going to malls.

Dr. Price testified that he used the information he gathered from his review of the records and his interview to complete several actuarial instruments to assist in assessing whether Cavazos risks reoffending. The first actuarial instrument Dr. Price completed is the STATIC-99R, an instrument that measures certain risk factors for reoffending. Cavazos received a score of "6," which means he has a "well above average" risk of reoffending. Dr. Price also completed a PCLR examination, which is the Psychopathy Checklist Revised examination. That instrument looks at 20 personality traits of a psychopathic personality. Results can range from 0 to 40. A score of 30 or more indicates a psychopath. Cavazos scored 27 on this examination. Dr. Price testified, that in light of additional records he received after calculating Cavazos' score, Cavazos' score might be higher.

Dr. Price diagnosed appellant with pedophilic disorder, anti-social personality disorder,[2] and major depressive disorder.[3] Pedophilic disorder means the individual is sexually attracted to pre-pubescent children and has acted on those urges. He explained that pedophilia is a very difficult disorder to cure. Treatment is typically aimed at management against reoffending. Dr. Price testified that Cavazos admitted to having sex with other offenders while in prison despite rules prohibiting such behavior, which further demonstrates Cavazos lacks volitional control and

---

[2] Anti-social personality disorder means the person's behavior and attitudes have consistently gone against the rules of society, and the person fails to conform his behavior to the norms of society with respect to lawful behaviors.

[3] Cavazos' records indicate that since he was an adolescent, he has been diagnosed as being a pedophile. Records after Cavazos turned 18 include an anti-social personality disorder diagnosis.

–4–

does not obey rules. Dr. Price concluded that Cavazos met the criteria for behavioral abnormality as set forth in the Texas Health & Safety Code.

At trial, Cavazos admitted to having committed the offenses Dr. Price described. He indicated that he always acted impulsively and had trouble controlling his anger. He claimed that upon release from prison he has no plan to commit another offense against a child and that he plans on seeking a sexual relationship with an adult. He claimed that Mr. Garrett, who is associated with a group called the Felony Foundation, will assist him with various things when he is released, but then admitted he does not know what, if any, assistance Mr. Garrett would provide.

The jury found beyond a reasonable doubt that Cavazos is a sexually violent predator. The court entered an order civilly committing him for treatment and supervision. Cavazos filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## DISCUSSION

In 1999, the Texas Legislature enacted the Civil Commitment of Sexually Violent Predators Act to protect the public from "a small but extremely dangerous group of sexually violent predators" who "have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." HEALTH & SAFETY § 841.001. The Act provides for the involuntary civil commitment, by means of outpatient treatment and supervision, of a repeat sexual offender who is found to be a sexually violent predator. *Id.* §§ 841.003(a), 841.081(a).

For a person to be civilly committed as a sexually violent predator, the State must prove beyond a reasonable doubt that the person (1) is a repeat sexually violent offender, and (2) suffers from behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a). A person is a repeat sexually violent offender if he has been convicted of more than one sexually violent offense and a sentence was imposed for at least one of the

offenses. *Id.* §§ 841.002(6), 841.003(b). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). A "predatory act" is one that is "directed toward individuals, including family members, for the primary purpose of victimization." *Id.* § 841.002(5).

Cavazos does not challenge the sufficiency of the evidence to support the jury's verdict and concedes that he is a repeat sexually violent offender. His challenge focuses on the behavioral abnormality requirement for civil commitment. He claims the trial court erred in admitting Dr. Price's testimony concerning the screening process for civil commitment cases and urges that the testimony was harmful because it conveyed to the jury the hearsay conclusions of other mental health professionals who had already determined that he has a behavioral abnormality at the outset of the case.[4]

If a trial court errs by improperly admitting evidence, reversal is warranted only if the error probably caused the rendition of an improper judgment. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). An erroneous evidentiary ruling is likely harmless if the rest of the evidence was so one-sided that the error likely made no difference. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008).

No court in Texas has considered whether it is error to permit the State to introduce evidence or comment on the statutory administrative screening process over a timely objection.[5]

---

[4] While Cavazos asserts the screening process was introduced before the State called its first witness, the record reflects that the State's attorney did not mention the screening process prior to calling Dr. Price to testify. Moreover, Dr. Price described his background, training, and how forensic evaluations are conducted before he described the process.

[5] Cavazos cites two decisions in sister states in support of his argument that conveying information concerning the screening process stacks the deck against the defendant and is reversible error. *See In re Det. of Stenzel*, 827 N.W.2d 690 (Iowa 2013); *In re Foster*, 127 P.3d 277 (Kan. 2006). While out-of-state cases may on occasion be persuasive authority, we are obviously not bound by them. *Tharp v. State*, 935 S.W.2d 157, 161 (Tex. Crim. App. 1996). In this case, *Foster* and *Stenzel* fail to persuade, and they are readily distinguishable from this case. *Foster* was a prosecutorial misconduct case, and, unlike the screening process in Texas, the process in Kansas included a probable cause hearing whereby the

In this case, we need not make that determination because Cavazos has failed to demonstrate that, if the trial court erred in allowing testimony about the process, that testimony probably led to the rendition of an improper verdict. *See McShane*, 239 S.W.3d at 234.

Dr. Price testified at length about Cavazos' decades-long history of sexual assault of minor males and his admissions concerning the dozens of children he victimized and his method and means of securing them. Dr. Price also testified about the actuarial tests he used to assess Cavazos' likelihood of reoffending and the results of the tests. Cavazos did not controvert Dr. Price's diagnoses or his conclusion that Cavazos met the criteria for behavioral abnormality. Records dating back decades corroborated Dr. Price's diagnoses of pedophilia and anti-social personality disorder. Moreover, the evidence presented established that, despite Cavazos' assertion that he will not commit offenses against children if he is released, Cavazos continued to abuse children over four decades, notwithstanding having received treatment and having served time in correctional facilities. Dr. Price's testimony concerning the screening process was limited in duration and the State's attorney did not mention the screening process during her opening statement and did not inappropriately mention the process during closing argument. Given the one-sided evidence of Cavazos' behavioral abnormality and the minimal reference to the screening process, we conclude Dr. Price's testimony concerning the screening process likely made no

---

district judge determines whether there is sufficient evidence to proceed with the commitment case. The jury was apprised of that step in the process during opening statements, and the Kansas Supreme Court found the State's reference to the district court's prior probable cause determination was damaging because it expressed judicial approval of the State's case. *Foster*, 127 P.3d at 280, 286. Further, the decision in *Foster* was limited to error and harm by statements made by the State's attorney during opening arguments. *See id.* at 286. In this case, the State's attorney did not mention the screening process during her opening statement. *See Brown v. State*, 519 S.W.3d 848, 859 (Mo. App. W.D. 2017) (finding no error in permitting comment and testimony regarding the screening process required under the sexually violent predators act where the assistant attorney general did not discuss the screening process in elaborate detail during opening statement and only mentioned it briefly to introduce the psychologist that performed the statutorily required end-of-confinement report). In *Stenzel*, the State's expert testified about the screening process and, during closing argument, the State's attorney argued there is "a screening process that goes into this and it's pretty sensitive and not many people meet the criteria as a sexually violent predator." *Stenzel*, 827 N.W.2d at 704. The State then reviewed the hoops that Stenzel's case had to go through. *Id.* Finally, the State recapped "[i]n this case, at every step of the way, Mr. Stenzel has been considered to meet the criteria for [sexually violent predator], but what's really—what's important is what you think?" *Id.* The court concluded, "[t]his aspect of the trial strikes us as lacking in probative value and unfairly prejudicial to the respondent." *Id.* at 706. Cavazos complains about the State's attorney's statements "if there was a doctor that said he didn't have a behavioral abnormality or a person or a prison guard we could have heard from them. Where is that person? You heard he went through the whole process and now we're here today." However, those statements do not rise to the level of those made by the State's attorney in *Stenzel*. Moreover, unlike the comments made in *Foster* and *Stenzel*, Dr. Price's comments were not tied specifically to appellant and Dr. Price never indicated any reliance on the screening process in forming his opinion.

difference to the jury on the issue of whether Cavazos suffers a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008).

We overrule Cavazos sole issue.

## CONCLUSION

We affirm the trial court's judgment.


/David J. Schenck/
DAVID J. SCHENCK
JUSTICE


180894F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

IN RE: THE COMMITMENT OF JOSE
CAVAZOS,

No. 05-18-00894-CV

On Appeal from the 282nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. CV1770006.
Opinion delivered by Justice Schenck.
Justices Osborne and Reichek participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 8th day of May 2019.