In the Matter of the Care and Treatment of Stephen ELLIOTT, a/k/a Tex, a/k/a Steve Elliott, a/k/a Lee Elliott, a/k/a Stephen L. Elliott, Appellant,

v.

**STATE of Missouri, Respondent.**

No. SC 87746.

Supreme Court of Missouri,
En Banc.

Feb. 13, 2007.

Rehearing Denied March 20, 2007.

Ellen H. Flottman, Emmett D. Queener, Office of Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl Caponegro Nield, Alana M. Barragan–Scott, Asst. Attys. Gen., Jefferson City, for Respondent.

WILLIAM RAY PRICE, JR., Judge.

A jury unanimously found Stephen Elliott to be a sexually violent predator ("SVP") pursuant to sections 632.480–

632.513 [1], RSMo Supp.2005.[2] Because his appeal challenges the validity of sections 632.480–632.513, jurisdiction lies solely in this Court. Mo. Const. art. V, sec. 3.

The Court holds: (1) that Missouri's SVP statute, sections 632.480–632.513, complies with the due process protections of the United States and Missouri constitutions; (2) expert testimony on the issue of "serious difficulty controlling behavior" was properly admissible in this case because the State's witness was qualified to testify as an expert and the information she studied in making her evaluation of Elliott and forming her opinion constituted facts or data of a type of reasonably relied upon by experts in the field; (3) expert testimony, including evidence of actuarial instruments, was properly admissible in this case because the actuarial instruments utilized constituted facts or data of a type reasonably relied upon by experts in the field that were otherwise reasonably reliable and their utilization was linked with an independent clinical evaluation of Elliott. The judgment is affirmed.[3]

## I. Facts

■ Stephen Elliott, who stands approximately six feet, four inches tall and weighs approximately 300 pounds, has an extensive history of committing sexually violent offenses against women and young girls.[4] From 1975 to 1989, Elliott raped at least eight women and young girls. Two of the victims were ages 12 and 13 at the time of the rapes. Elliott raped two women on the same day on more than one occasion. He raped while he was on parole. He raped women vaginally, anally, and orally, and his rapes were characterized by excessive force. He struck several of the women he raped, forced more than one into his vehicle, caused a bite mark to appear on one, and broke the cheekbone of another.

Two of the women were choked by Elliott as he forced himself on them, one to the point of unconsciousness. He forced several of the women to do humiliating things during the rapes. The 13–year–old girl raped by Elliott reported that he laughed and smiled as he raped her, despite her tears and pleas for mercy. He told two of the women he would lock them away and rape them forever. He threatened to kill his victim on more than one occasion.

In 1989, Elliott was convicted of raping Sandra Talbott. Elliott served fifteen years and was scheduled to be released from prison on June 24, 2004. On June 15, 2004, the State of Missouri filed a petition to commit Elliott to the custody of the Missouri Department of Mental Health

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. "Sexually violent predator" is defined as "any person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility" Section 632.480. At the time of Elliott's trial, the State was required to prove, "beyond a reasonable doubt," that an individual was a sexually violent predator. Sec. 632.495, RSMo. Supp.2005. Subsequently, the burden of proof was changed to the current "clear and convincing evidence." Sec. 632.495, RSMo Supp.2006.

3. Two companion cases, involving several of the issues presented here, *In the Matter of the Care and Treatment of Mark Murrell* (No. SC 87804), 215 S.W.3d 96 (2007) and *In the Matter of the Care and Treatment of Timothy S. Donaldson*, 214 S.W.3d 331 (2007), are also decided this date.

4. This Court reviews the facts in the light most favorable to the verdict. *State v. Gill*, 167 S.W.3d 184, 187 (Mo. banc 2005).

pursuant to section 632.492, RSMo Supp. 2001.[5]

Before the trial date, the court ordered an evaluation of Elliott to be performed by Dr. Jeanette Dunkin, a psychologist and certified forensic examiner of the Missouri Department of Mental Health. At trial, the State produced evidence of Elliott's history of sexually violent crimes. Dr. Dunkin testified[6] that it was her opinion that Elliott suffers from the mental abnormality of sexual sadism, a form of paraphilia as set forth in the DSM–IV,[7] which predisposes him to commit sexually violent offenses.

Dr. Dunkin also testified that Elliott's condition causes him serious difficulty controlling his behavior. This opinion was based in part upon statements made by Elliott. She acknowledged that Elliott stated at one point, "I have molested a boy." Additionally, in a "true/false" self-report administered around 2000, Elliott answered true to the following: 1) several times a week I feel something dreadful is going to happen; 2) at times I have a strong urge to do something harmful or shocking; 3) I often hear voices without knowing where they come from; and 4) someone has control over my mind.

Dr. Dunkin stated that it was her opinion, to a reasonable degree of medical certainty, that Elliott suffers from a mental abnormality that makes him more likely than not to engage in predatory acts of sexual violence if not confined to a secure facility. She explained that she measured Elliott's risk of re-offense by looking first to an actuarial instrument known as the Static–99, which is commonly used in sexually violent predator evaluations. Dr. Dunkin then referred to what she called aggravating factors, which increase Elliott's risk of re-offense. These factors included past substance abuse, the fact he repeatedly re-offended while on parole, and the fact that Elliott never completed a relapse prevention plan.

The jury unanimously found Stephen Elliott to be a sexually violent predator. The court entered judgment on the verdict and ordered Elliott to be placed in the custody of the Missouri Department of Mental Health for control, treatment and care until his mental condition has so changed that he is safe to be at large.

## II.  Discussion

### A.  Points on Appeal

Elliott raises three points of error on appeal: (1) the trial court erred when it denied his motion to dismiss the State's petition because sections 632.480–632.513 violate due process; (2) the trial court erred in admitting expert testimony on the element of "serious difficulty controlling behavior"; (3) the trial court erred in admitting the results of the Static–99 actuarial instrument as applied to him by Dr. Dunkin.

**5.** Section 632.492 reads, in relevant part: "Within sixty days after the completion of any examination held pursuant to section 632.489, the court shall conduct a trial to determine whether the person is a sexually violent predator. The person, the attorney general, or the judge shall have the right to demand that the trial be before a jury. If the trial is held before a jury, the judge shall instruct the jury that if it finds that the person is a sexually violent predator, the person shall be committed to the custody of the director of the department of mental health for control, care and treatment."

**6.** Because Elliott refused to be interviewed by Dr. Dunkin, she relied upon her review of the available police records, court records, victims' statements, and probation and parole reports.

**7.** American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (rev. 4th ed. 2000) (DSM–IV).

## B. Constitutionality of Sections 632.480–632.513

This issue is identical to the constitutional issue presented in *In the Matter of the Care and Treatment of Mark Murrell*, 215 S.W.3d 96 (Mo. banc 2007) (No. SC 87804, decided February 13, 2007), in which the appellant asserted Missouri's SVP statute was unconstitutional because it does not require the State to prove that the individual poses an immediate risk of harm. The holding in *Murrell* that Missouri's SVP statute, sections 632.480–632.513, is constitutional, controls.

## C. Expert Testimony on Serious Difficulty Controlling Behavior

■ Elliott next argues the trial court erred in allowing expert testimony on the issue of whether he has serious difficulty controlling his behavior because no recognized scientific research exists to assist experts in making such a determination.

### 1. Preservation of Issue for Appeal

■ The State argues that Elliott has not preserved this point for appeal. "A ruling in limine is interlocutory only and is subject to change during the course of the trial." *State v. Purlee*, 839 S.W.2d 584, 592 (Mo. banc 1992). "[A]dditional information produced at trial may prompt the trial court to alter its pretrial ruling and admit the evidence. Therefore, an objection must be made at trial when the evidence is offered or the reference made, preferably outside the hearing of the jury, in order to preserve for appellate review the ruling made thereon." *State v. Evans*, 639 S.W.2d 820, 822 (Mo.1982) (internal citation omitted).

Before trial, Elliott filed a motion to exclude expert testimony regarding serious difficulty controlling behavior. The motion was overruled. Elliott renewed his motion before the opening statements and the court again overruled it, but noted the motion would be continuing in nature. Subsequently, during the testimony of Dr. Dunkin the State asked:

[Prosecutor]: "In your opinion, Doctor, to a reasonable degree of psychological certainty, does Mr. Elliott suffer from a mental abnormality?"

Counsel for Elliott asked to approach the bench, where he objected as follows:

[Defense counsel]: "I need to object at this point to the Doctor coming to the conclusion that he suffers from a mental abnormality based on the fact that this is the definition that is incorporated through the *Thomas* opinion. And also, ***based on the other pretrial motion that we filed regarding serious difficulty controlling behavior and allowing an expert opinion on that*** ... and I need to renew my objection ... and ask that it be noted as a continuing objection throughout her discussion on serious difficulty controlling behavior."

(emphasis added). The record is clear. Elliott's counsel renewed his objection as to the issue of serious difficulty controlling behavior. The trial judge was given an opportunity to rule on the objection during the trial. The objection was acknowledged by the court and noted as continuing throughout the challenged testimony. The State's argument that the issue was not preserved is without merit.

### 2. Standard of Review

■ The determination of whether to admit evidence is within the sound discretion of the trial court. A trial court will be found to have abused its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State v. Johns*, 34

S.W.3d 93, 111 (Mo. banc 2000). This Court's direct appeal review is for prejudice, not mere error, and the trial court's decision will be reversed only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Strong,* 142 S.W.3d 702, 710 (Mo. banc 2004). Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial. *State v. Zink,* 181 S.W.3d 66, 73 (Mo. banc 2005).

### 3. Evidentiary Standards

■ Missouri's SVP statute is civil in nature. *See Kansas v. Hendricks,* 521 U.S. 346, 367–68, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). Admission of expert testimony in civil cases is governed by section 490.065. *State Board of Registration for the Healing Arts v. Edward W. McDonagh,* 123 S.W.3d 146, 153 (Mo. banc 2003). The statute provides, in relevant part:

1. In any civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

. . .

3. The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

Sections 490.065.1, 490.065.3.

The first issues of admissibility under 490.065.1 are whether "specialized knowledge will assist the trier of fact" and whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. Sec. 490.065.1. If expert testimony will assist the trier of fact and if the expert is qualified to testify under subsection 1, the expert is entitled to base his opinion upon facts or data 1) "of a type reasonably relied upon by experts in the field," and 2) that "must otherwise be reasonably reliable." Sec. 490.065.3.

Elliott cites *In the Matter of the Care and Treatment of Coffel,* 117 S.W.3d 116 (Mo.App.2003), as support for his contention that testimony on the issue of "serious difficulty controlling behavior" should be excluded. He argues that *Coffel* stands for the proposition that such testimony is inadmissible because it is not based on reliable science or research. His reading of *Coffel* is exaggerated.

In *Coffel,* the State filed a petition seeking to have a female committed as an SVP, and she was subsequently committed following a bench trial. 117 S.W.3d at 117, 119. The court of appeals reversed the judgment of commitment, finding there was insufficient evidence to support a finding that she is more likely than not to reoffend if not committed. *Id.* at 127. The court noted, in dicta, that when absolutely no evidence is presented as to whether the scientific principles or facts or data relied upon by the expert are of the type reasonably relied upon in the relevant scientific community, expert testimony is not admissible. *See id.* at 129. However, the ultimate holding did not speak to the sufficiency of the foundation of the expert testimony.

Rather, the holding in *Coffel* stands only for the proposition that no reliable evidence was presented on female sexual offender recidivism and that without such evidence a finding that the female is more

likely than not to reoffend could not be made. *Id.* In *Coffel,* one of the State's experts admitted that "she could not say whether the characteristics identified in the studies she relied on are risk factors for reoffense because no such research is available at this time." *Id.* at 123. Consequently, *Coffel* is distinguishable from this case and does not support Elliott's argument that Dr. Dunkin was not qualified to testify as to whether Elliott has "serious difficulty controlling behavior."

Expert testimony as to a sexual offender's serious difficulty controlling his behavior has been held admissible. *See Whitnell v. State,* 129 S.W.3d 409, 414 (Mo.App. 2004). In *Whitnell,* the court of appeals held that testimony on the subject was admissible because the witness had qualifications to testify on the issue, had testified in court regarding the mental conditions of persons approximately 100 times, had previously evaluated five persons to determine whether or not they were SVPs, and stated the facts that he considered in reaching his conclusions and indicated that these facts were of a type reasonably relied on by experts in forming opinions concerning the issue. *Id.* at 415; *see also Murrell,* op. at 113.

### 3.  Evidence Presented

The facts in this case closely mirror those in *Whitnell* and the holding in that case is directly applicable here. The record shows Dr. Dunkin is a psychologist and certified forensic examiner for the Northwest Missouri Psychiatric Rehabilitation Center, licensed in the State of Missouri. She received a bachelor's degree in psychology from the University of Missouri–Columbia and a master's degree and doctorate in clinical psychology, both from the California School of Professional Psychology in Fresno, an American Psychological Association approved institution.

Dr. Dunkin has completed over 100 forensic evaluations and testified in court on over a dozen occasions. She had made five sexually violent predator evaluations at the time of Elliott's trial. Dr. Dunkin possesses the requisite knowledge, skill, experience, training, and education in the area. Sec. 490.065. She was qualified to testify as an expert in this case.

Dr. Dunkin stated that the information she studied in making her evaluation of Elliott and forming her opinion was the type of information generally relied upon in her profession to form opinions in SVP cases. Sec. 490.065.3. In making her clinical evaluations and forming her opinion, Dr. Dunkin relied on reports on Elliott, including available police records, court records, victims' statements, and probation and parole reports. She considered Elliott's individual characteristics. She considered Elliott's extensive history of raping women when he was not incarcerated and the fact that he raped more than one woman on the same day. She based her opinion on Elliott's sadism and his drive to have his victims suffer some type of humiliation and physical and psychological suffering. She noted that the fact he reoffended despite the risk he would be incarcerated, and reoffended when released from jail and while on probation, indicated he could not control his behavior.

She also testified that her opinion was based on the survey answers of Elliott, taken in 2000, indicating that several times a week he feels something dreadful will happen; that he has a strong urge to do something harmful or shocking at times; that he feels someone has control over his mind; that sometimes his soul leaves his body; and that he hears voices without knowing where they come from. Dr. Dunkin relied upon facts contained in numer-

ous records, all of which are reasonably relied upon in her profession.

Finally, Dr. Dunkin testified that it was her opinion, to a reasonable degree of medical certainty, that Elliott has serious difficulty controlling his behavior and suffers from impairment in his ability to self-regulate. On cross-examination, Dr. Dunkin agreed that "serious difficulty" was a term that could be considered arbitrary and admitted that there is no way to numerically quantify whether an individual has serious difficulty controlling his behavior. Nevertheless, she stated that she could explain the difference between difficulty controlling one's behavior and "serious" difficulty controlling one's behavior and that, indeed, Elliott had serious difficulty controlling his behavior. Dr. Dunkin testified in the proper manner that was helpful to the jury.

■ The trial court did not abuse its discretion in admitting expert testimony on the subject of "serious difficulty controlling behavior." Dr. Dunkin was qualified as an expert by knowledge, skill, experience, training, and education. Sec. 490.065.1. The facts and data upon which Dr. Dunkin based her opinion are reasonably relied upon and Elliott has failed to show that they are not reliable. Sec. 490.065.3. Dr. Dunkin's testimony as to her opinion on the matter was proper, especially when combined with her testimony as to the lack of any quantifiable numerical certainty on the subject. "Any weakness in the factual underpinnings of the expert's opinion ... goes to the weight that testimony should be given and not its admissibility." *Alcorn v. Union Pac. R.R.*, 50 S.W.3d 226, 246 (Mo. banc 2001). Elliott had an opportunity to adequately address any weaknesses on cross-examination.

## D. Admissibility of the Actuarial Instruments

■ Elliott last argues the trial court abused its discretion in admitting Dr. Dunkin's testimony as to the results of the Static–99 actuarial instrument. This issue is identical to the evidentiary issue presented in *In the Matter of the Care and Treatment of Mark Murrell*, 215 S.W.3d 96 (Mo. banc 2007).

■ This Court's holding in *Murrell*, that expert testimony, including evidence of actuarial instruments, may be properly admissible in sexually violent predator cases, controls here. "[T]estimony incorporating the results of actuarial instruments is admissible in cases involving the civil commitment of an SVP when the instruments are used in conjunction with a full clinical evaluation." *Murrell*, op. at 112, 2007 WL 465932 at *12.

Dr. Dunkin testified that according to the Static–99 instrument, Elliott's score of 7 on the test puts him in the "high risk" category of reoffense and, therefore, tends to make more probable the likelihood that Elliott is a risk to reoffend once released from prison. The Static–99 was not the only evidence Dr. Dunkin considered in forming her opinion as to Elliott's risk of reoffense. Dr. Dunkin instructed that the Static–99 was a place to start the process of risk assessment. The instrument was used in conjunction with a full clinical evaluation in this case. She also looked to Elliott's individual characteristics in making her own clinical evaluation of his risk to reoffend. She considered hundreds of pages of reports, including available police records, court records, victims' statements, and probation and parole reports. Elliott is a man who violently raped and humiliated at least eight women and young girls during the time he has not been incarcerated. Each instance of those rapes independently came into evidence. The trial

court did not abuse its discretion in holding that testimony regarding Dr. Dunkin's utilization of the Static–99 was admissible under 490.065.

### III. Conclusion

The judgment is affirmed.

STITH, LIMBAUGH, RUSSELL and WHITE, JJ., concur.

WOLFF, C.J., concurs in separate opinion filed.

TEITELMAN, J., concurs in opinion of WOLFF, C.J.

MICHAEL A. WOLFF, Chief Justice, concurring.

I adhere to the dissenting opinion in *In the Matter of the Care and Treatment of Mark A. Murrell, Appellant, v. State of Missouri, Respondent,* that use of the STATIC–99 actuarial instrument in civil commitment proceedings is inappropriate and irrelevant. That said, the principal opinion in *Murrell* controls the issue in this case, and, accordingly, I concur.