

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111789 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| vs. | ) | 2111-CR02955 |
| | ) | |
| PAUL J. WARREN, | ) | Honorable Daniel G. Pelikan |
| | ) | |
| Appellant. | ) | Filed: May 6, 2025 |

Before Lisa P. Page, P.J., Rebeca Navarro-McKelvey, J., and Virginia W. Lay, J.

Paul Warren (Defendant) appeals from the trial court's judgment and sentence, convicting him of second-degree statutory sodomy, second-degree statutory rape, and two counts of incest, following a jury trial. The trial court sentenced him to eight years of imprisonment for each of the statutory sodomy and rape counts, to be served consecutively, and four years of imprisonment for the incest counts, to be served concurrently with the sodomy and rape counts, for a total of sixteen years. We affirm the convictions but reverse and remand for resentencing.

## BACKGROUND

Defendant was convicted of the class C felony of second-degree statutory sodomy, the class C felony of second-degree statutory rape, and two counts of the class D felony of incest for his conduct relating to his younger sister (Victim) between May 7, 2006, and August 31, 2009, when she was less than seventeen years old and Defendant was at least twenty-one years old. On

appeal, Defendant challenges the testimony of the state's expert witness but not the sufficiency of the evidence to support his convictions; thus, we view the evidence in the light most favorable to the verdicts.

During the four-day trial in April 2023, in addition to the expert testimony at issue in this appeal, Victim testified extensively about Defendant's sexual abuse, starting when she was in first grade and became "routine," until she was sixteen or seventeen. The state presented substantial evidence to include Defendant's admissions to family and a former girlfriend that he abused Victim, to corroborate her testimony. Victim's husband testified she disclosed Defendant's abuse to him in November 2011 and showed him text messages from Defendant admitting he raped her. He respected her wishes not to act upon her disclosure, but at her request, he discussed the texts with her brother (Brother). She did not further disclose the abuse to her family until 2020 when she learned Defendant was expecting a daughter.

The jury returned guilty verdicts on all four counts. Defendant filed a motion for new trial, in part arguing the trial court erred by permitting Victim's therapist (Therapist) to testify, which was denied. The trial court sentenced Defendant to eight years' imprisonment each for second-degree statutory sodomy and second-degree statutory rape, to be served consecutively, and four years' imprisonment for each count of incest, to be served concurrently, for a total sentence of sixteen years. This appeal follows.

## DISCUSSION

Defendant raises four points on appeal. His first two points allege the trial court erred by permitting Therapist to testify as an expert. In his third and fourth points, Defendant alleges the trial court plainly erred in sentencing Defendant to serve eight years in the Missouri Department of Corrections because the authorized term of imprisonment for a conviction of statutory sodomy

2

in the second degree and statutory rape in the second degree was only seven years, so the sentences exceeded the maximum sentences. The state concedes these points; therefore, we grant points three and four.[1]

*Points I & II*

Defendant's first two points allege the trial court erred, or plainly erred if not preserved, by permitting Therapist to testify as an expert; in point one, because she lacked the necessary experience, training, or education to testify on the topic of delayed disclosure of intrafamilial sexual abuse; and point two, because her testimony about treating Victim was specific and improperly commented on Victim's veracity. Defendant alleges the errors were prejudicial, evident, obvious, and clear, resulting in a manifest injustice and deprived Defendant of his right to due process and a fair trial as guaranteed by the U.S. and Missouri Constitution.

*Expert witness hearing*

Prior to trial, Defense counsel filed a motion to exclude the testimony of Therapist, reasoning that notice was given thirteen days prior to the original trial setting in January 2023, and that Defense counsel did not have time to hire its own expert witness. The case proceeded to trial in April 2023. Once the jury was empaneled, the court held an expert witness hearing (Hearing) pursuant to Section 490.065 RSMo (Supp. 2017),[2] outside of the presence of the jury, regarding Therapist's testimony.[3] During the Hearing, Therapist testified she worked in private

---

[1] Defendant was charged with committing the offense of second-degree statutory sodomy, in violation of Section 566.064, RSMo. (2006), between May 7, 2006, and August 31, 2009, (Count I), and statutory rape in the second degree, in violation of Section 566.034, RSMo. (2006) between May 7, 2006, and August 31, 2009, (Count II), in the Third Amended Indictment. Both second-degree statutory sodomy and second-degree statutory rape were class C felonies at that time, for which punishment was a term of imprisonment, including both prison and conditional release terms, for "a term of years not to exceed seven years." Section 558.011.1(3), RSMo. Cum. Supp. 2003.
[2] Unless otherwise indicated, all statutory references are to RSMo. (Supp. 2017).
[3] The record reflects the Hearing was characterized as a "*Daubert*" hearing in reference to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), which sets forth the federal standards for expert witness testimony. While Daubert may be relevant in analyzing Missouri's expert witness statute, it is not dispositive of the admissibility of such testimony. As a result, we more accurately consider it an expert witness hearing pursuant to

3

practice as a mental health professional, and she taught and conducted research as an associate professor for graduate students at St. Louis University School of Medicine. She provided her credentials, including her education, licenses and certificates, and clinical experience.

Since 2008, Therapist had been practicing clinically, seeing adolescent to adult patients with sexual concerns, trauma, issues in their families or couple relationships. She estimated between one-third to one-half of her patients had experienced sexual abuse in their history, and most of them had experienced the sexual abuse under the age of eighteen, while almost all had experienced the abuse under the age of twenty-one. Because she saw patients for a long period of time, she estimated she saw about fifteen to twenty patients in the last five years who had experienced some kind of sexual abuse in adolescence or childhood. She said delayed disclosure was her most common observation, as she was the first person many of her patients told, or she saw adult patients who just recently disclosed earlier abuse and were trying to heal from it. She explained that family shaming, silencing, and rejection can occur when people disclose, which is sometimes worse than the trauma itself.

Therapist testified that she taught a class called Trauma Informed Care. She said she had training on and taught about issues with abuse occurring within a respected familial relationship. She said the delayed disclosure from a victim of sexual abuse is not novel in her field, but is common knowledge, and was supported by her research and experience. The younger victim admiring and respecting or bonding with their perpetrator was one of the "complicated factors" to work through in therapy and therapists should expect to see it. She said she operates under the

---

Section 490.065. *See Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 700 (Mo. App. E.D. 2020) (explaining the *Daubert* factors alone are not controlling in determining reliability of an expert's testimony, rather the admissibility inquiry is flexible and may include other relevant factors).

assumption of believing her clients, as long as their story and emotional response are consistent, unless "something strange happens or it seems odd to me in some way."

Upon questions from defense counsel, Therapist admitted she never testified as an expert before, and was not a forensic psychologist. She does not conduct her own research on sexual abuse reporting, but said she stayed current on the literature on the topic. She claimed false reporting, particularly for those who report later in life, is relatively uncommon. When asked about the term "CSAAS," Therapist said she was not familiar with it, and Defense counsel stated it was "a generally accepted theory of children adapting to be sexually abused, especially in the context of prolonged abuse when still in the company of the abuser. And it's been the generally accepted theory since it came out I think it was in 1980." No other evidence was presented about this term other than the defense again asking Therapist on re-cross examination whether she was familiar with it.

Following Therapist's Hearing testimony, Defense counsel argued Therapist was not qualified to testify as an expert because she was not a psychologist, a psychiatrist, or a forensic interviewer, stating, "While she may have a nice practice and she reads articles and she's, you know, helped some people, I don't think she qualifies as an expert, specifically in this case." Defense counsel added that it was improper for Therapist to testify that she was treating Victim as a sexual abuse victim.

The court asked the state what Therapist was going to testify to, and the state responded Therapist was going to testify that she counseled Victim as a victim of sexual abuse, and she was going to explain the dynamics of a delayed disclosure, especially relating to abuse by a family member. The state argued Therapist had training, class work, and read literature on this, stating, "I think I've established that she's – she's an expert in this field. Whether she knows a specific

5

acronym or not, that's not really a relevant issue. . . . This is certainly her wheelhouse." The state reiterated that Therapist dealt with adolescents and adults, especially adults who were victimized when they were younger.

After considering the evidence and the arguments, the court ruled Therapist could testify to "delayed disclosure and its commonality and its application to this case." The court limited the state not to "go any farther" than testimony that delayed disclosure is quite common in Therapist's experience, especially when there is a familial relationship. The court further denied Defense counsel's request for a motion in limine to prevent Therapist from testifying that she was treating Victim for sexual trauma, not just trauma.

The next morning, before the jury was brought into the courtroom, the state sought clarification so as not to violate the court's ruling. The state, in anticipation of the defense bringing in Victim's letters and evidence of a very good relationship with Defendant, wanted to ask Therapist "that that's normal in sex abuse situations where the perpetrator is a respected family member . . ." The defense objected, based on Therapist's limited experience and the court's prior ruling. After again considering counsel's argument, the court further clarified that, "I'd be willing to allow her to speak not that this is normal, because I don't know if she has the experience and training, but that she has seen this before" in her own patients.

*Therapist's testimony before the jury*

The state called Therapist during the case in chief. She testified about her education and training to become a certified sex therapist, licensed marital and family therapist, and her national and state supervisor status. She was employed as an associate professor at St. Louis University Medical School for the past eight years. Since 2008, she also maintained a clinical

practice providing therapy to clients, stayed current in the literature and empirical research on various topics of family and sex therapy, and attended conferences.

Therapist testified in her private practice she counsels and gives therapy to victims of sexual abuse, where she currently works with adults and about twenty percent adolescents. Throughout her years in practice, she explained that about half of her clients have experienced childhood sexual abuse as minors and that it occurs within the clients' families or very close communities for most of the people with whom she worked, the most common being uncles, brothers, and cousins. Intrafamilial sexual abuse or incest is "actually one of the more common experiences of sexual abuse, at least in my practice," she explained, partially because of access to the victims.

Therapist testified she began seeing Victim in 2017 for about sixteen to twenty sessions and again in the summer of 2020 for another year for about twenty more sessions, totaling thirty-five to forty sessions in all. Therapist explained the process of therapy is quite lengthy and has different stages. The "presenting problem," or the "thing that they bring to you," was about "the childhood sexual abuse she experienced with her brother and wanted to try to make sense of it, understand it." Therapist said that in 2017, Victim had told "almost no one" and was experiencing a lot of anxiety about it. She explained the first sessions with a childhood sexual abuse victim are about building trust and a relationship. She added that when she's dealing with trauma, they start talking about the story. Therapist spent a lot of time with Victim trying to understand the family dynamic and why she felt like she couldn't tell them.

Therapist testified that delayed disclosure:

> . . . is when somebody has experienced sexual abuse in childhood and they wait many, many years to tell anyone. I've worked with folks who hadn't shared -- they were long into their 40s before they told anyone . . . so the delayed disclosure

7

is about years of time between when it happened and when they actually told anybody.  **It is quite common therapeutically to have –**

At this point, Defense counsel requested that the attorneys approach the bench for a discussion outside of the jury's hearing.  Defense counsel then argued, "She just said exactly what she wasn't supposed to say."  The court replied that Therapist did not say "normal," but instead, "common."  Defense counsel stated it was "semantics" and he thought there was a "huge distinction."  He explained, "I think it's exactly the same; common and normal.  Common is normal.  Something that's common is normal.  That's a problem."

The prosecutor agreed Therapist was not to use the word "normal" and she did not.  But he thought "common" was permissible.  The court corrected him, stating, "uncommon" was different than "common."  The court directed the state to "use the phrase it is not uncommon.  Okay?  That was my ruling."  The court allowed the state to take Therapist off the stand to instruct the witness outside of the jury's presence.

Defense counsel then asked to instruct the jury to strike what was said.  The court denied the request "because [Therapist] didn't use the word normal.  She used common" and the state was correcting that by telling her to use "not uncommon."

When Therapist's testimony resumed, she explained that she asks her clients write letters to their family where sexual abuse is happening to feel safe, cared for, and loved.  She said in most cases the perpetrator is an older person in the family, an uncle, brother, someone they look up to, so staying connected to them is part of solving that "conundrum" of how to stay safe and loved inside a family where they are also getting hurt.

After the break in Victim's therapy, she resumed in 2020 for another twenty sessions to address "what to do with her family and how to tell people, how to talk about it, how to stay

8

connected with them in the midst of what had happened for her. And she had talked about some more sort of ongoing conflict." Therapist said Victim resumed therapy because

> . . . in 2017 it was about the sexual abuse that happened when she was a child and trying to work through that as a traumatic experience. She was experiencing a lot of anxiety. In 2020 it seemed like the anxiety had resurfaced and she was experiencing a lot of change in her life and wanting to try and address it one more time with her family.

Therapist testified that Victim talked to her about Defendant becoming a father and that Victim was fearful for the safety of his child. During those sessions, Victim did not recant or accuse anyone else other than Defendant.

Therapist was subjected to a thorough cross-examination in which she admitted she was not a forensic psychologist or psychiatrist, nor a forensic interviewer. Defense counsel again inquired if Therapist was familiar with "CSAAS," as in the Hearing, which Defense counsel explained ". . . it's the generally accepted theory of children adapting to being sexual abused, especially in the context of prolonged abuse when still in the company of the abuser." She responded no. Yet again, the defense presented no other evidence of CSAAS.

Defense counsel asked Therapist about Victim's anxiety in 2017, and Therapist answered Victim was concerned about people finding out and what to do with the information, if she should tell, "which is really not uncommon in my experience." Defense counsel also questioned Therapist on her ability to determine her clients' truthfulness. He asked if she only knew what Victim told her, not whether it was true or not, and Therapist agreed she only knew what her client told her. Therapist testified she learned "how to read people and how to read their body language, how to read how they're telling the story . . . how to tell a coherent story as to sort of the beginning, middle and the end." But she added she was not an investigator. She explained she always looked for whether her clients' feelings match their stories, which was "certainly part

9

of our training." She agreed she was not insinuating she could tell when someone was telling the truth or not.

On redirect, the state asked Therapist what Victim's emotions were when she disclosed the sexual abuse to her, and Therapist answered Victim was "incredibly anxious, very jittery," which was what she typically sees. The state asked, without objection, if there was anything about Victim's disclosures in all her sessions that "caused you alarm" that maybe her "leg is being pulled or something like that," and Therapist answered no.

Defense counsel again re-cross-examined Therapist and asked whether someone telling an untruthful story might be more nervous than if they were telling the truth, and the state objected for calling for speculation, which the court sustained.

*Preservation of Error*

The parties disagree as to whether the alleged errors regarding Therapist's testimony were preserved here. Defense counsel first raised the issue of admissibility of Therapist's testimony as a motion in limine based on the timely notice given that Therapist was the state's expert. At trial, during the Hearing Defense counsel argued Therapist was not qualified to testify as an expert because she was not a psychologist, a psychiatrist, or a forensic interviewer. Defense counsel did not specifically object to Therapist's testimony during trial but instead requested an off-the-record conference to clarify the trial court's rulings as to Therapist's testimony, and arguments were made during Therapist's trial testimony that it was violating the limits placed by the trial court's rulings.

A trial court's ruling on a motion in limine to exclude evidence is considered interlocutory and is subject to change during the trial. *State v. Chambers*, 234 S.W.3d 501, 511 (Mo. App. E.D. 2007) (quoting *State v. Mickle*, 164 S.W.3d 33, 54-55 (Mo. App. W.D. 2005)).

10

Therefore, a motion in limine preserves nothing for appeal. *Id.* Typically, the objecting party must make a specific objection at the time of the attempted admission of the evidence. *State v. Gee*, 684 S.W.3d 363, 376-77 (Mo. App. W.D. 2024) (citing *State v. Spears*, 452 S.W.3d 185, 196 (Mo. App. E.D. 2014)).

Defendant contends his arguments were not limited to a motion in limine but asserts his points regarding Therapist were preserved because of the Hearing and the sidebar held during trial which resulted in the court further limiting her testimony regarding delayed disclosure to say it was "not uncommon" as opposed to "normal" or "common." Defendant relies on the Missouri Supreme Court's opinion in *State v. Baker*, 103 S.W.3d 711, 717 (Mo. banc 2003), which acknowledged the continued validity of an objection where "it was mutually understood that appellant did not intend to repudiate his prior objection . . . ." Furthermore, "[o]ur rules for preservation of error for review are applied, not to enable the court to avoid the task of review, nor to make preservation of error difficult for the appellant, but, to enable the court – the trial court first, then the appellate court – to define the precise claim made by the defendant." *State v. Amick*, 462 S.W.3d 413, 415 (Mo. banc 2015) (quoting *State v. Pointer*, 887 S.W.2d 652, 654 (Mo. App. W.D. 1994)).

While Defendant here did not request a continuing objection on the record and later stated he had "no objection" as counsel did in the *Baker* case, we appreciate the similarity that the parties had a mutual understanding of the arguments that took place during the Hearing. These arguments were later carried forth into trial, first when the state requested a pretrial hearing for further clarification of the court's ruling and then during a sidebar conference requested by Defendant, both of which further limited Therapist's trial testimony. Thus, we find the issue is preserved for appeal and review for abuse of discretion.

11

The decision to admit evidence is "within the sound discretion of the trial court."  *Elliott v. State*, 215 S.W.3d 88, 92 (Mo. banc 2007).  Such decision is reviewed for an abuse of discretion.  *State v. Boss*, 577 S.W.3d 509, 516 (Mo. App. W.D. 2019) (citing *State v. Blurton*, 484 S.W.3d 758, 769 (Mo. banc 2016)).  We will not disturb this broad discretion unless it is "against the logic of the circumstances and was so arbitrary or unreasonable as to shock the sense of justice and indicate a lack of careful consideration."  *Matter of L.D.*, 613 S.W.3d 791, 796 (Mo. App. E.D. 2020).

*Point I*

Point one alleges error in permitting Therapist to testify as an expert on the topic of delayed disclosure of intrafamilial sexual abuse because she lacked the necessary experience, training, or education to testify as an expert on the topic.  The expert witness statute, Section 490.065 sets forth the legal basis for admitting expert testimony.  A trial court abuses its discretion if it erroneously finds that the requirements of the expert witness statute are met.  *Kivland v. Columbia Orthopaedic Group, LLP*, 331 S.W.3d 299, 311 (Mo. banc 2011) (citing *State Bd. of Registration for Healing Arts v. McDonagh,* 123 S.W.3d 146 (Mo. banc 2003).  If the trial court finds the expert is qualified "by knowledge, skill, experience, training, or education," the expert's testimony will assist the trier of fact to understand the evidence or determine a fact in issue, and that the facts or data the expert uses are reasonably relied on by experts in the field and otherwise reasonably reliable, the trial court must admit his or her testimony.  Section 490.065.2; *Kivland*, 331 S.W.3d at 310-11.

Generally, the trial court defers to the expert's assessment of what facts or data are reasonably relied upon in their field.  *Goddard v. State,* 144 S.W.3d 848, 854 (Mo. App. S.D.

2004); *Doe v. McFarlane,* 207 S.W.3d 52, 62 (Mo. App. E.D. 2006). The trial court also must look beyond the expert's assessment and independently determine whether the facts and data on which the expert's opinion is based are "otherwise reasonably reliable." *McFarlane,* 207 S.W.3d at 62 (quoting *McDonagh,* 123 S.W.3d at 156). Only where the sources relied on by the expert are "so slight as to be fundamentally unsupported," should the expert's opinion be excluded. *Id*. (internal quotation omitted); *Goddard,* 144 S.W.3d at 854; *see also In re Shafer,* 171 S.W.3d 768, 773 (Mo. App. S.D. 2005) ("the trial court is only mandated to exclude testimony in those cases where the source upon which the expert relies is so slight as to be fundamentally unsupported").

"Further, and importantly, questions as to the sources and bases of the expert's opinion affect the weight, rather than the admissibility, of the opinion, and are properly left to the jury." *Matter of Sohn*, 473 S.W.3d 225, 230 (Mo. App. E.D. 2015) (internal quotation omitted). Any weakness in the expert's knowledge is for the jury to consider in determining what weight to give the expert's testimony. *Kivland*, 331 S.W.3d at 311; *Elliott*, 215 S.W.3d at 95. We will not disturb the trial court's holding regarding the admissibility of expert testimony unless there is an abuse of discretion that shows a shocking lack of careful consideration. *Matter of L.D.*, 613 S.W.3d at 796.

In point one, Defendant argues Therapist had little more than a layman's qualifications on the subjects to which she testified: delayed disclosure, its commonality especially when there is a familial relationship, and its application to this case where Therapist was treating Victim for sexual trauma. Defendant compares this case to the experts in *State v. Minor*, 648 S.W.3d 721, 733 (Mo. banc 2022), and *State v. Vandergrift*, 669 S.W.3d 282, 297 (Mo. banc 2023), in which the witnesses "actually demonstrated the requisite background to testify on delayed disclosure"

13

because one had conducted thousands of interviews and received specific training in delayed disclosures (*Minor*), and the other had received training in delayed disclosures during both of her graduate programs and then served as an investigator for the Children's Division for many years (*Vandergrift*).

However, we do not find the experts in *Minor* and *Vandergrift* have the only allowable "knowledge, skill, experience, training, or education" to be qualified as experts. Nor do we find any lack of familiarity of Defendant's supposedly "expert" term, "CSAAS," has any bearing on Therapist's qualifications as an expert, as only Defense counsel said it was important and presented no evidence to support that claim. Therapist here testified at trial she was familiar with the term "delayed disclosure" and that she had worked with many clients who had not shared their stories of abuse long into their forties. She was an associate professor at St. Louis University Medical School and a therapist with her own clinical practice and had a bachelor's degree in psychology and master's in psychology counseling, in addition to a Ph.D. in family therapy. At both the Hearing and at trial, she testified to her extensive experience which qualified her to testify about delayed disclosure. Accordingly, we do not find Therapist's sources of knowledge, skill, experience, training, or education are "so slight as to be fundamentally unsupported," and the trial court properly admitted her testimony. Moreover, Therapist was subjected to a thorough cross-examination regarding her qualifications. This afforded Defendant an opportunity to demonstrate any weakness in her qualifications, which allowed the jury to determine the proper weight to accord her testimony. *Kivland*, 331 S.W.3d at 311; *Elliott*, 215 S.W.3d at 95.

The trial court did not abuse its discretion in allowing Therapist to testify as an expert because it is not clearly against the logic of the circumstances then before the court, nor does it

14

demonstrate unreasonableness by a lack of careful consideration. *Matter of L.D.*, 613 S.W.3d at 796. In fact, we find during the Hearing before trial and during her testimony, the trial court carefully considered Therapist's testimony and clearly considered her qualifications when limiting her trial testimony to the topics of delayed disclosure, its commonality in a familial relationship, and its application to this case, that she was treating Victim for sexual abuse and delayed disclosure is not uncommon. Thus, an admission of her testimony cannot be held to show a "shocking lack of consideration" by the court. *Id.* Defendant's first point is denied.

*Point II*

Defendant's second point further argues the trial court erred in permitting Therapist to testify about counseling Victim because this was not a proper area for expert testimony, and her testimony was too specific and improperly commented on Victim's veracity.

Evidence is only admissible when it is logically and legally relevant. *State v. Prince*, 534 S.W.3d 813, 817 (Mo. banc 2017). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* (citing *State v. Collings*, 450 S.W.3d 741, 756 (Mo. banc 2014) (quoting *State v. Anderson*, 306 S.W.3d 529, 538 (Mo. banc 2010)). If the evidence is logically relevant, it is admissible only if it is also legally relevant, which weighs the probative value of the evidence against its costs—"unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Anderson*, 306 S.W.3d at 538. The court should exclude logically relevant evidence when its prejudice outweighs its probative value. *Id.*

The evidence of a victim undergoing therapy after sexual abuse may be logically and legally relevant. *State v. Cusumano*, 399 S.W.3d 909, 917 (Mo. App. E.D. 2013). In *Cusumano*, this court held the victim's testimony as to the emotional trauma she suffered as a result of the

15

defendant's crime, as well as the therapy she received and safety measures she continued to take more than twenty years later, was relevant to the elements of force, display of a deadly weapon, and the presence of more than one actor. *Id.* at 917. The court explained:

> Common experience teaches us a sexual offense can cause behavioral and personality changes in the complainant. Consequently, evidence of physical and psychological changes in the victim is relevant to prove the elements of the sexual offense itself and thus may be admitted to show the offense did in fact occur. We further note that the trial court has broad discretion in ruling on the admissibility of evidence where the issue is relevancy.

*Id.* (internal quotations omitted); *see also State v. Phillips,* 670 S.W.2d 28, 32 (Mo. App. W.D. 1984) (the victim's testimony as to mental trauma and the receipt of therapy was relevant to elements of the state's case: the brutality of the assaults, the elements of force, and the lack of consent).

As to whether Therapist improperly commented on Victim's veracity when she testified why she was treating Victim, we agree expert witnesses should not give their opinion as to the veracity of another witness's statement because they invade the province of the jury. *State v. Churchill*, 98 S.W.3d 536, 538-39 (Mo. banc 2003). In child sex abuse cases, there are two types of expert testimony: general and particularized. *Id.* at 539. General testimony describes behaviors and other characteristics commonly found in those who have been victims of sexual abuse, while particularized testimony concerns a specific victim's credibility as to whether they have been abused. *Id.* The trial court has broad discretion in admitting general testimony, but must reject particularized testimony because it "usurps the decision-making function of the jury and therefore, is inadmissible." *Id.*

Here, we find the trial court did not abuse its discretion by admitting Therapist's testimony because it was relevant to why Victim did not disclose the abuse sooner. We further find the comments Therapist made about common issues she saw in her clients, including

16

delayed disclosure, were permissible generalities. Therapist's testimony regarding treatment of Victim for the sexual abuse is not impermissible particularized evidence because it merely explained the reason Victim presented to Therapist for treatment, but was not a comment on Victim's veracity. As in *Phillips*, here evidence Victim's mental trauma witnessed by Therapist was relevant to show the offense did in fact occur. *See Phillips,* 670 S.W.2d at 32.

We find Defense counsel questioned Therapist during cross-examination on her ability to determine her clients' truthfulness, specifically asking whether she knew if Victim told her the truth, and she answered that she only knew what Victim told her, not whether it was true. Therapist explained, through generalized testimony, that she learned "how to read people and how to read their body language, how to read how they're telling the story . . . how to tell a coherent story as to sort of the beginning, middle and the end." But she added she was not an investigator. She explained she always looked for whether her clients' feelings are matching their stories they shared with her, which was "certainly part of our training." She agreed she was not insinuating she could tell when someone was telling the truth or not.

On redirect, the state asked Therapist what Victim's emotions were when she disclosed the sexual abuse to her, and Therapist answered Victim was "incredibly anxious, very jittery," which she generalized as what she typically sees. The state then asked without objection if there was anything about Victim's disclosures in all her sessions that "caused you alarm" that maybe her "leg is being pulled or something like that," and Therapist answered no. But on re-cross-examination, the defense asked Therapist whether someone telling an untruthful story might be more nervous than if they were telling the truth, and the state objected as calling for speculation, which the court sustained.

17

Upon our review of the record, we find the trial court did not abuse its discretion in denying Defendant's motion to exclude evidence because Therapist's testimony on redirect was too specific and should have been excluded. We will not convict the trial court of error in failing to intervene *sua sponte* and exclude the evidence of Victim's veracity during Therapist's testimony when Defense counsel could have or should have raised the issue, or perchance, affirmatively elected not to do so as a matter of trial strategy. As the *Hamilton* court stated when it affirmed convictions for rape and sodomy:

> If the trial court [*sua sponte*] excluded the [expert's] evidence [claimed on appeal to be too much vouching for the victim's credibility], the accused could claim on appeal that the trial court improperly interfered by barring evidence which the accused consciously chose to allow the jury to hear, thereby requiring reversal. To state the scenario is to expose its potential for mischief.

*State v. Hamilton,* 892 S.W.2d 774, 781 (Mo. App. S.D. 1995). Point two is denied.

## CONCLUSION

The judgment of the trial court is affirmed on points one and two but the sentences for second-degree statutory sodomy and second-degree statutory rape are reversed and remanded for resentencing according to the punishment authorized by law.

_____
Lisa P. Page, Presiding Judge

Rebeca Navarro-McKelvey, J., and
Virginia W. Lay, J., concur.

18